## LILY B. CRAIG v. HOMESTEAD NURSING HOME, INC., AND ANOTHER.

133 N. W. (2d) 837.

March 12, 1965—No. 39,329.

*Fred Sorenson,* for relator.

*Robb, Robb & Van Eps* and *M. W. Gaughan,* for respondents.

OTIS, JUSTICE.

Relator, Lily B. Craig, seeks review of a decision of the Industrial Commission holding that the disability for which she claims compensation did not arise out of an accident which she experienced while in the course of her employment with respondent Homestead Nursing Home, Inc.

On January 29, 1961, at about 8 p. m., while discharging her duties as a practical nurse, Mrs. Craig collided with the corner of a desk at her place of employment. She testified that the blow was severe and caused excruciating pain to her abdomen. Although she continued to work until 11 p. m. and returned the following 3 days, she complained of constant distress for more than 7 weeks following the accident. On February 7, 1961, she entered the hospital. Surgery was performed the next day. Her attending physician, Dr. J. H. Strickler, drained a large abscess in the lower right quadrant of her abdomen. She remained in the hospital until February 14 and was able to work only 6 days thereafter, until March 19, when she was readmitted. On March 21, Dr. Strickler performed an appendectomy. She was permitted to leave the hospital on March 25, and returned to work on April 1, after which time she has experienced no further disability.

In these proceedings Mrs. Craig seeks compensation under Minn. St. c. 176 for temporary total disability and for the medical and hospital expenses which she has incurred.

The referee found that the injury of January 29 caused the subsequent disability and awarded compensation accordingly. In an accompanying memorandum he stated, among other things, that he was of the opinion "due to the fact there was a continuity of symptoms immediately following the blow that the blow did aggravate a disease condition which may or may not have been present immediately at the time but did subsequently precipitate the need for medical and hospital attention." On appeal, a majority of the commission held that the employee had not sustained her burden of proof and concluded that the weight of the evidence supported the opinion of Dr. Strickler that Mrs. Craig's disability did not result from the blow to her abdomen on Janu-

ary 29.[1] A dissenting commissioner was of the opinion that the testimony concerning continued pain up to the time of the operation was sufficient to justify the award.

In essence, it is the contention of the relator that the evidence does not sustain the commission's decision, and that the rule requiring the compensation act to be liberally construed in favor of the employee requires an affirmance of the referee's findings. She supports her claim by asserting there is no medical explanation for the fact she had no symptoms prior to the blow but continued to experience pain until after the appendectomy and has had no difficulty since that time. In addition, relator relies on the expert opinion of Dr. A. T. Hays, who examined her on April 30, 1962, and testified on her behalf at the trial.

On the basis of the hospital records and the history given by Mrs. Craig, Dr. Hays testified that the blow of January 29 was "a definite precipitating factor in the development of a gangrenous appendix which later went on to rupture and abscess formation [sic] requiring her necessary surgery." In support of his conclusion, he stated that the appendix was vulnerable to injury because it was not in a free-lying position but was attached to the posterior abdominal wall behind the cecum. A fecalith partially obstructed the appendix, and the doctor believed the blow caused a swelling of the appendix wall, or some bleeding, which completed the obstruction of the appendix, leading to its ultimate rupture. In arriving at his opinion, Dr. Hays testified that it was significant a reddish-brown material was found at the bottom of the abscess pocket after the first operation. He based his conclusions on the assumption that this material was old blood resulting from a hematoma. The doctor's diagnosis was qualified, however, by statements that while the relation between the blow and the ruptured appendix was "very possible," and it was "plausible" and "conceivable" that the blow "could be" a causative factor resulting in the ruptured appendix,

---

[1] Under Minn. St. 176.421, subd. 6, the commission may disregard the referee's findings and substitute its own. See, Hartman v. Cold Spring Granite Co. 243 Minn. 264, 271, 67 N. W. (2d) 656, 660; Yureko v. Prospect Foundry Co. 262 Minn. 480, 490, 115 N. W. (2d) 477, 483.

traumatic appendicitis is extremely rare and its diagnosis is "denied by many surgeons."

The attending physician, Dr. Strickler, testified unequivocally that the injury of January 29, 1961, did not cause the appendicitis. He stated that because of the protected position of the appendix it could not be ruptured by trauma without also rupturing the cecum, and then only by a blow of a severity comparable to being run over by a truck.

When Dr. Strickler drained the abscess in Mrs. Craig's abdomen on February 8, the reddish-brown material was first noted. At that time Dr. Strickler was of the opinion the color indicated there was possibly an infected hematoma or blood clot. He could not then determine whether this was the cause of the abscess or whether it resulted from carcinoma of the cecum, a ruptured appendix, or a ruptured diverticulum. He stated that a laboratory examination established it was not an infected blood clot, since multiple bacteria, which are characteristically found only in the bowel, were present. He testified that what Dr. Hays assumed was blood, was in fact necrotic debris and fecal matter originating in the ruptured appendix and was not the result of hematoma.

While there is no evidence of just when relator's abscess began or when her appendix ruptured, it seems likely that the blow which occurred on January 29 resulted in pain of an intensity which Mrs. Craig would not otherwise have experienced had it not been for the fact the abscess was in the process of developing. In any case, we are of the opinion that the continuity of her symptoms did not require a finding as a matter of law that the accident caused her appendix to rupture.

In the light of Dr. Hays' fallacious assumption that the reddish material was old blood, and in the face of Dr. Strickler's testimony that in performing the second operation he found no evidence of traumatic appendicitis, we cannot say that the commission's decision is unsupported by substantial evidence, and it is therefore affirmed.

Affirmed.